UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


FRANCOIS                                    CIVIL ACTION

VERSUS                                      NO: 12-1965

JEFFERSON PARISH SHERIFF'S                  SECTION: "J" (3)
OFFICE ET AL.

### ORDER AND REASONS

Before the Court are Defendants West Jefferson Medical
Center and Anthony Digerolamo (collectively, the "Medical
Defendants")'s **Motion to Dismiss (Rec. Doc. 12)**, Defendants
Sheriff Newell Normand and Deputy Michael Miles (collectively,
the "Law Enforcement Defendants")'s **Motion for Summary Judgement
(Rec. Doc. 25)**, Plaintiff's oppositions thereto **(Rec. Docs. 18,
28, respectively)**,[1] the Medical Defendants' reply to Plaintiff's

---

[1] Record Document 28 is entitled "Opposition to Motion Not to Dismiss
Because of False Statements" and is tagged in the on-line filing system as a
response to the Medical Defendants' Motion to Dismiss; however, because Plaintiff
is proceeding *pro se*, and because she has already submitted an opposition to the
Medical Defendants' Motion to Dismiss, the Court will consider this document to
be her opposition to the Law Enforcement Defendants' Motion for Summary Judgment.
See Haines v. Kerner, 404 U.S. 519, 520 (1972); Grant v. Cuellar, 59 F.3d 523,
524 (5th Cir. 1995) ("we liberally construe briefs of *pro se* litigants and apply
less stringent standards to parties proceeding *pro se* than to parties represented
by counsel"). In particular, the Court notes that this second filing refers
specifically to one of the Law Enforcement Defendants, Deputy Michael Miles,
indicating that it was filed in response to the later-filed Motion for Summary

opposition to their Motion to Dismiss **(Rec. Doc. 32)**, and Plaintiff's *surreply* to same **(Rec. Doc. 35)**. Defendants' motions were set for hearing on December 19, 2012, on the briefs, without oral argument. Having considered the motions and legal memoranda, the record, and the applicable law, the Court finds that Defendants' motions should be **GRANTED** for the reasons set out more fully below.

### PROCEDURAL HISTORY AND BACKGROUND FACTS

This action arises out of civil rights claims for false arrest and imprisonment brought under 42 U.S.C. § 1983 and Louisiana state law. Plaintiff also brings claims for intentional and/or negligent infliction of emotional distress, loss of companionship, negligence, negligent supervision, gross negligence, and assault under Louisiana state law. On July 30, 2012, Plaintiff, Annie Francois ("Mrs. Francois"), filed this action *pro se*, naming West Jefferson Medical Center (the "Medical Center"), Anthony Digerolamo ("Mr. Digerolamo"), Jefferson Parish Sheriff's Office, and Deputy Michael Miles ("Deputy Miles") as Defendants.

In her complaint, Plaintiff alleges that Jefferson Parish

---

Judgment, rather than the earlier Motion to Dismiss. Pl.'s Opp. to Mot. Summ. J., Rec. Doc. 28, p. 1.

Sheriff's Office falsely arrested and imprisoned her on August 2, 2011 and August 3, 2011.[2] Plaintiff asserts that her arrest was "based upon false and slanderous statements made by Mr. Digerolamo." Compl., Rec. Doc. 1, p. 5, ¶ 20. She contends that Mr. Digerolamo, an employee at the Medical Center and the supervisor of Plaintiff's daughter, reported to the police that Plaintiff "had 'threatened his life and the life of his family members'" during a phone call that she had made to him earlier that day. Compl., Rec. Doc. 1, p. 5, ¶ 20. Plaintiff contends that Mr. Digerolamo's statement to the police was a lie, and that she did not threaten his life or his family members' lives.[3] Plaintiff alleges that based upon Mr. Digerolamo's report, the

---

[2] Plaintiff explains that on August 2, 2011, she was arrested in St. Charles Parish by the St. Charles Parish Sheriff's Office pursuant to a warrant issued by the Jefferson Parish Sheriff's Office. Plaintiff states that "she was escorted from her suburban St. Charles Parish home, transported, booked and charged into the Nelson Coleman Correctional Center," on August 2nd. Compl., Rec. Doc. 1, p. 5, ¶ 17. Plaintiff further explains that four hours after being booked, she was "released on the condition that she report to the Jefferson Parish Sheriff's Office the following morning and be re-booked." Compl., Rec. Doc. 1, p. 5, ¶ 18. Plaintiff states that she complied with the conditions of her release and "was booked into the Jefferson Parish Sheriff's office at 10:05 a.m. and later released on bond at 6:00 p.m on August 3, 2011." Compl., Rec. Doc. 1, p. 5, ¶ 18.

[3] Plaintiff reports that during the conversation that took place between her and Mr. Digerolamo on the day in question, she did not threaten him; rather, Plaintiff contends that she asked him to "let up" on her daughter and "to end the torment." Compl., Rec. Doc. 1, p. 4, ¶ 4. She further asserts that she "ended the call by quoting scripture" and explaining to Mr. Digerolamo "that by being evil to [her daughter], one day evil would befall him and he would be forced to answer to God." Compl., Rec. Doc. 1, p. 4, ¶ 4. She reports that she told him verbatim, to "[r]emember, the bible says whatever evil one does will one day come back to you." Compl., Rec. Doc. 1, p. 4, ¶ 4.

Jefferson Parish Sheriff's Office, without further investigation, issued the warrant for her arrest. Compl., Rec. Doc. 1, p. 4, ¶¶ 15, 16.

Plaintiff contends that because the arrest was made on false information without a proper investigation, it violated her rights under the Fourth, Fifth, and Fourteenth Amendments. She asserts that the arrest has caused her "immeasurable humiliation, pain, and suffering," for which she seeks damages. Compl., Rec. Doc. 1, p. 6, ¶ 21.

In response, the Medical Defendants filed the instant Motion to Dismiss on September 11, 2012. After being granted a continuance, Plaintiff filed her opposition on October 23, 2012. The Law Enforcement Defendants filed their Motion for Summary Judgment on November 29, 2012. Plaintiff responded on December 12, 2012. All parties requested that the Court set the motions for hearing together on December 19, 2012.

## THE PARTIES' ARGUMENTS

The Medical Defendants request that Plaintiff's claims against them be dismissed for lack of subject matter jurisdiction and/or for failure to state a claim upon which relief can be granted. Specifically, the Medical Defendants argue that Plaintiff has no viable federal claim against them under 42

4

U.S.C. § 1983 and, therefore, that this Court does not have subject matter jurisdiction. The Medical Defendants further contend that because there is no viable federal claim, this Court should not grant supplemental jurisdiction on any remaining state law claims.

The Medical Defendants assert that Plaintiff has not stated a viable Section 1983 claim against them, because there is no legal prohibition against reporting a threat to law enforcement. In conjunction, they also assert that to the extent there is any viable action against them, they "are protected by the conditional privilege for reporting a matter of [sic] affecting the public interest to the police, such as the commission of a crime or an anticipated crime." Medical Defs.' Mot. to Dismiss, Rec. Doc. 12-1, p. 5. Furthermore, they contend that Plaintiff has failed to allege all of the Section 1983 elements because (1) she has not alleged that falsely reporting threats is a policy or custom of the Medical Center, and (2) she has only made conclusory allegations that the Medical Defendants intended to restrict her movement.

In addition, with respect to Plaintiff's state law claims, the Medical Defendants assert that Plaintiff has failed to plead the facts necessary to state any valid claim. In particular, they

argue that she has not alleged a claim for false arrest or imprisonment because she has not stated "that anyone at or on behalf of the [Medical Defendants] ever 'arrested [her] or caused [her] to be arrested' or 'restrict[ed] [her] freedom of movement.'" Medical Defs.' Mot. to Dismiss, Rec. Doc. 12-1, p. 6. The Medical Defendants also assert that all of Plaintiff's negligence claims must be dismissed because they did not owe her any legal duty of care. Additionally, they claim that her claims for "exemplary damages" must be dismissed because, "as a matter of law, punitive damages are not recoverable against a political subdivision." Medical Defs.' Mot. to Dismiss, Rec. Doc. 12-1, p. 8.

The Law Enforcement Defendants assert that Plaintiff's claims against them should be dismissed as a matter of law because: (1) they had probable cause to arrest Plaintiff; (2) they arrested Plaintiff pursuant to a validly authorized warrant; and, (3) as local officials, they cannot be held liable under 42 U.S.C. § 1983 via the doctrine of respondeat superior. Specifically, the Law Enforcement Defendants contend that Deputy Miles, the officer dispatched to the scene, obtained a statement from Mr. Digerolamo and investigated the incident on-site and, in the process of that investigation, learned that Plaintiff had

made multiple phone calls in which she made threatening statements to Mr. Digerolamo.[4]   Thereafter, the Law Enforcement Defendants assert that Detective Robert Miles (non-defendant officer) prepared the application for the arrest warrant based upon Deputy Miles's report and presented that information to Commissioner Caroline Kiff who independently reviewed the information and approved it. After obtaining her approval, a unit was dispatched to arrest Plaintiff for violation of Louisiana Revised Statute § 14:285, harassing phone calls. While Plaintiff did not name the Sheriff as a defendant in the instant action, the Law Enforcement Defendants assert that by law, the Jefferson Parish Sheriff's Office cannot be sued and, therefore, Sheriff Normand would be the proper  Defendant. Nevertheless, the Law Enforcement Defendants also note that Sheriff Normand had no personal involvement in the incident, nor does Plaintiff allege otherwise, and, as such, he cannot be held liable under Section 1983.

In response, while Plaintiff makes no legal argument, she asserts that Defendants have misconstrued the facts in their motions. She explains that she did not personally threaten Mr.

---

[4] The Law Enforcement Defendants provide contemporaneous emails sent by Medical Center Staff, Mr. Digerolamo's statement to the police, and sworn affidavits by the investigating and arresting officers in support of their account. Law Enforcement Defs.'s Ex.'s, Rec. Docs. 25-4  through 25-10.

Digerolamo in her calls to him, but rather, that she told him that God would punish him for his conduct. Plaintiff contends that the police never verified Mr. Digerolamo's statement with her but instead accepted it as true and then arrested her. Furthermore, in her response to the Motion for Summary Judgment, she reiterates her claims that Deputy Miles did not thoroughly investigate the situation. Plaintiff claims that the fact that the calls were made at 11:05 a.m. and that she was arrested shortly thereafter at 5:00 p.m. is proof that Deputy Miles did not conduct an adequate investigation.

## DISCUSSION

### I.   Motion for Summary Judgment & the Law Enforcement Defendants[5]

#### A. Legal Standard

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56(c)); Little v. Liquid Air Corp., 37 F.3d 1069, 1075

---

[5] Because the Court's findings on the Law Enforcement Defendants' Motion for Summary Judgment are dispositive of issues affecting all Defendants, it addresses that motion first.

(5th Cir. 1994).  When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co., 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. Little, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." Delta, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" Int'l Shortstop, Inc. v. Rally's, Inc., 939 F.2d 1257, 1263-64 (5th Cir. 1991) (citation omitted). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." Id. at 1265.

If the dispositive issue is one on which the nonmoving party

will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. _See_ _Celotex_, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. _See_ _id._ at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. _See, e.g., id._ at 325; _Little_, 37 F.3d at 1075.

**B. Analysis**

**1.      Deputy Miles**

The Law Enforcement Defendants assert that Deputy Miles is entitled to qualified immunity and, as a matter of law, cannot be sued in the instant case. This Court agrees. Evaluating a qualified immunity claim is a two step process. First, the court must determine whether the plaintiff has alleged sufficient facts to demonstrate a violation of a constitutional right. _Saucier v. Katz_, 533 U.S. 194, 201 (2001), _overruled in part by_ _Pearson v. Callahan_, 555 U.S. 223 (2009). Second, the court must determine whether the constitutional right was clearly established at the

time the alleged violation occurred.[6] Failure to answer either of these inquires in the affirmative results in a finding of qualified immunity for the defendant in question.

When the constitutional claim in question is one of false arrest and/or imprisonment, the key to determining whether the facts demonstrate that a constitutional violation has occurred is determining whether the arrest was made with probable cause. Hightower v. Schaubhut, No. 89-3243, 1990 WL 58129, at *2 (E.D. La. April 26, 1990) (citing Hinshaw v. Doffer, 785 F.2d 1260, 1266 (5th Cir. 1986), *overruled on other grounds by* Johnson v. Morel, 876 F.2d 477, 480 (5th Cir. 1989)). The Fifth Circuit has explained that "probable cause is the 'sum total of layers of information and the synthesis of what police have heard, what they know, and what they observed as trained officers.'" United States v. Shaw, 701 F.2d 367, 376 (5th Cir.1983) (quoting United States v. Edwards, 577 F.2d 883, 895 (5th Cir.1978) (en banc)). "To determine whether probable cause exists, the Court looks at

_____

[6] Id. It should be noted that while the United States Supreme Court advocates this two step approach to analyzing qualified immunity, in Pearson the Court made it clear that courts are free to reorder the analysis based on the circumstances of each individual case. Pearson, 555 U.S. at 236, 242 ("Although we now hold that the *Saucier* protocol should not be regarded as mandatory in all cases, we *continue to recognize that it is often beneficial*. . . . Because the two-step *Saucier* procedure is often, but not always, advantageous, the judges of the district courts and the courts of appeals are in the best position to determine the order of decisionmaking that will best facilitate the fair and efficient disposition of each case." (emphasis added)). In this case, however, the Court finds that a Saucier type analysis is appropriate.

the totality of the circumstances in order to decide "whether there is a fair probability that a crime occurred." DiLosa v. City of Kenner, No. 03-0310, 2004 WL 2984342, at *5 (E.D. La. Dec. 16, 2004) (quoting United States v. Garcia, 179 F.3d 265, 269 (5th Cir. 1999)). "Before determining that probable cause exists, reasonable law officers are not required to resolve every doubt about a suspect's guilt." DiLosa, 2004 WL 2984342 at *5 (citing Gomez v. Atkins, 296 F.3d 253, 262 (4th Cir. 2002)). "Although an officer 'may not disregard readily available exculpatory evidence . . . the failure to pursue a potentially exculpatory lead is not sufficient to negate probable cause.'" DiLosa, 2004 WL 2984342 at *5 (quoting Wadkins v. Arnold, 214 F.3d 535, 541 (4th Cir. 2000)).

When evaluating probable cause in the context of qualified immunity, the court "embark[s] on a 'practical, common-sense [determination] whether given all of the circumstances' a reasonable officer could have believed 'there is a fair probability' [Plaintiff] committed the crime charged." Hernandez v. Terrones, 397 Fed. App'x 954, 966-67 (5th Cir. 2010) (alterations in original) (quoting Mendenhall v. Riser, 213 F.3d 226, 231 (5th Cir. 2000)). Typically, the question is evaluated in the context of the arresting officer and/or the officer who

applied for the arrest warrant. See, e.g., Malley v. Briggs, 475 U.S. 335 (1986) (holding that an officer who requests an arrest warrant for an allegedly unconstitutional arrest is entitled to qualified immunity where the reasonable officer would believe that he had valid probable cause to apply for the warrant). In the instant case, however, Plaintiff has not sued the arresting officer or the officer who requested the arrest warrant. Rather, Plaintiff sued Deputy Miles, the investigating officer; therefore, the question before the Court is whether a reasonable investigating officer would believe that Deputy Miles' investigation was sufficient to support a finding of probable cause for arrest.[7]

Based on the facts of this case, the Court cannot say that Deputy Miles' conduct was unreasonable. Upon receiving Mr. Digerolamo's complaint, Deputy Miles interviewed Mr. Digerolamo

---

[7] To the extent that it might appear that Plaintiff's true claim is one for "unconstitutional investigation" or "negligent investigation," the Court notes that the United States Fifth Circuit Court of Appeals has stated that it does not recognize a freestanding constitutional violation for either of those claims. Hernandez v. Terrones, 397 Fed. Appx. at 966 ("We did not hold that the negligent investigation . . . in Sanders [was a] freestanding constitutional violation[], rather, [it was] conduct supporting [Plaintiff's] claims for false arrest and illegal detention."); Sanders v. English, 950 F.2d 1152, 1159 (5th Cir. 1992) (evaluating complaints of negligent investigation within the context of the clearly recognized constitutional violations of false arrest and illegal detention (false imprisonment)). Rather, where the plaintiff has stated claims for false arrest and/or false imprisonment, the court evaluates the reasonableness of the investigation conducted as a factor supporting the probable cause analysis. Hernandez, 397 Fed. Appx. at 966 (explaining the court's holding in Sanders and stating that negligent investigation is really conduct which supports claims for false arrest and imprisonment).

about the calls and obtained a sworn statement from Mr. Digerolamo chronicling the incident. Law Enforcement Defs.' Mot. for Summ. Judgment Ex. 9, Rec. Doc. 25-9, p. 1. The statement reflected that Plaintiff had called Mr. Digerolamo at his place of employment, and that he felt threatened by the calls. Law Enforcement Defs.' Mot. for Summ. Judgment Ex. 3, Rec. Doc. 25-6, pp. 1-2. Mr. Digerolamo's statement notes that the specific statements that concerned him were Plaintiff's assertion that "[h]e will suffer" and that, presumably Plaintiff, "will see that he gets his." Law Enforcement Defs.' Mot. for Summ. Judgment Ex. 3, Rec. Doc. 25-6, p. 1. Likewise, Mr. Digerolamo's statement identified Plaintiff as the caller and provided Plaintiff's motive for threatening him, namely, his treatment of her daughter at the hospital where they both worked. Law Enforcement Defs.' Mot. for Summ. Judgment Ex. 3, Rec. Doc. 25-6, p. 1-2. Deputy Miles' affidavit reflects that he turned this information over to Detective Robert Miles who then confirmed Plaintiff's identity, address, and biographical information, and applied, independently of Deputy Miles, for an arrest warrant for violation of Louisiana Revised Statute 14:285(1).[8]

---

[8] Law Enforcement Defs.' Mot. for Summ. Judgment Ex. 5, Rec. Doc. 25-8, p. 1. La. R.S. § 14:285(1) states that "No person shall: Engage in or institute a telephone call, telephone conversation, or telephone conference, with another person, anonymously or otherwise, and therein use obscene, profane, vulgar, lewd,

While it might have been prudent for Deputy Miles to follow up with Plaintiff regarding the phone calls, this Court cannot say that it was required, nor can the Court say that a reasonable officer would have followed up with Plaintiff.[9] Deputy Miles' report reveals that he collected sufficient information to arrest Plaintiff for a violation of the aforementioned statute. Moreover, Plaintiff has not actually contested the facts included in Deputy Miles report, i.e. that she called Mr. Digerolamo, or that she said Mr. Digerolamo would be punished. Likewise, Plaintiff has not alleged that Deputy Miles falsified the facts in anyway. Rather, Plaintiff contests Mr. Digerolamo's interpretation of her statements, and his characterization of them to Deputy Miles. Plaintiff contends that she was not

---

lascivious, or indecent language, or make any suggestion or proposal of an obscene nature or threaten any illegal or immoral act with the intent to coerce, intimidate, or harass another person." Id.

    [9] While not binding upon this Court, the Court finds a statement by the United States Eleventh Circuit Court of Appeals helpful in explaining its rational. In Williams v. City of Albany, 936 F.2d 1256 (11th Cir. 1991), the Eleventh Circuit explained that,

    [o]nce a witness tells a story which, if believed, would support criminal charges, society's interest swings in favor of the investigating officer presenting that witness to the proper authorities without fear of personal liability . . . . [r]easonable police investigators must be secure in the knowledge that they can present evidence of a crime to the proper charging officials without worry of suit, so long as they do not fabricate evidence or submit evidence with certain knowledge of falsity.

Id. at 1260.

15

personally threatening to punish Mr. Digerolamo, but instead, warning him that God would punish him for his actions. Even taking that as true, it still does not preclude the Court from finding that Deputy Miles was within his right to pass Mr. Digerolamo's statements on to Detective Robert Miles so that Detective Robert Miles might independently apply for a warrant. As such, this Court finds that probable cause existed to arrest Plaintiff and, therefore, that Plaintiff has not stated sufficient facts to support a finding that a constitutional violation has occurred. Accordingly, Deputy Miles is entitled to qualified immunity, and all of Plaintiff's claims against him must be dismissed as a matter of law.

> ### 2.      Jefferson Parish Sheriff's Office & Sheriff Newell Normand

Defendant Jefferson Parish Sheriff's Office asserts that it is not an entity capable of being sued. The Court agrees. Louisiana law has not afforded any legal status to parish sheriff's departments such that they can be sued. Causey v. Parish of Tangipahoa, 167 F. Supp. 2d 898, 904 (E.D. La. 2001) (quoting Valentine v. Bonneville Ins. Co., 691 So. 2d 665, 668 (La. 19997)). Legal status is reserved for the sheriff. Causey, 167 F. Supp. at 904. Consequently, the Jefferson Parish Sheriff's

16

Office is not a proper party in this action and must be dismissed as a matter of law.

Likewise, although Sheriff Newell Normand would be a proper party to this action, the Law Enforcement Defendants correctly contend that he cannot be held liable under the circumstances of this case.[10] Under 42 U.S.C. § 1983, local officials cannot be found liable solely because they employ an alleged tortfeasor. Monell v. Dep't Soc. Servs. of the City of New York, 436 U.S. 658, 694-95 (1978). Rather, the Plaintiff must demonstrate that the violation occurred pursuant to an official policy and/or that the official personally participated in the violating conduct. Id. at 691. In the instant case, Plaintiff has not alleged that Sheriff Newell Normand personally participated in the events in question, nor has she alleged that the violation took place in response to official department policy. Moreover, as this Court has previously noted, the facts of this case do not support a finding that any actual constitutional violation took place. Therefore, Plaintiff's claims against Sheriff Newell Normand

---

[10] Although Plaintiff has not named Sheriff Newell Normand as a Defendant, the Law Enforcement Defendants proceeded to analyze his liability in the current action because he is the party who should have been named in the action. In essence, they concede that he would be the proper party if an action existed. Because Plaintiff is proceeding *pro se* and may not have been aware of this differentiation when initially filing her complaint, the Court will also analyze Sheriff Newel Normand's liability in this case.

would also need to be dismissed as a matter of law.

## II.   Motion to Dismiss & the Medical Defendants

### A. Legal Standard[11]

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 547 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.  A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. Lormand v. U.S. Unwired, Inc., 565 F.3d 228, 232-33

---

[11] The Court notes that the Medical Defendants have raised their motion under both Federal Rule of Civil Procedure 12(b)(1) and Rule 12(b)(6), contending that the Court lacks subject matter jurisdiction over Plaintiff's claims and/or that Plaintiff has failed to state a claim upon which relief can be granted. Under 28 U.S.C. § 1331, federal courts have subject matter jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. In the instant case, Plaintiff has asserted that this Court has subject matter jurisdiction under a federal law, 42 U.S.C. § 1983, thereby indicating that per 28 U.S.C. § 1331, the underlying cause of action in this case involves a federal question over which this Court has subject matter jurisdiction. As such, Defendants arguments, which actually target the sufficiency of the pleadings, are properly analyzed under Rule 12(b)(6). Gonzalez v. Southern Pacific Transp. Co., 773 F.2d 637, 645 (5th Cir. 1985) ("the assertion of a claim under a federal statute [] is sufficient to empower the district court to assume jurisdiction and determine whether [] the Act does provide[s] the [] rights. If . . . the plaintiff fails to establish a claim brought under a federal statute, the case is properly dismissed under Fed.R.Civ.P. 12(b)(6) or 56."(citations and quotations omitted)).

(5th Cir. 2009); Baker v. Putnal, 75 F.3d 190, 196 (5th Cir. 1996). The court is not, however, bound to accept as true legal conclusions couched as factual allegations. Iqbal, 556 U.S. at 678.

Although *pro se* plaintiffs are held to less stringent standards than those drafted by lawyers, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." Taylor v. Books A Million, Inc., 296 F.3d 376, 378 (5th Cir. 2002). Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 346 (2005). The allegations "must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1).

**B. Analysis**

**1. West Jefferson Medical Center**

The Medical Defendants assert that Plaintiff has failed to state a claim against the Medical Center, because she has failed to assert that the alleged constitutional violation was a result of an official policy and/or custom. The Court finds that the

Medical Defendants' argument has merit.

In order to bring a claim against a municipality or other local bodies under 42 U.S.C. § 1983, a plaintiff must allege that the constitutional violation in question occurred pursuant to an official policy or custom. <u>Monell</u>, 436 U.S. at 694-95. A plaintiff may demonstrate that the violation was a result of an official policy by alleging that the violation: (1) was a result of  a decision made by a municipal legislative body, (2) occurred in keeping with authority delegated by a municipal legislative body, (3) was effected by an individual with final decisionmaking authority, and/or (4) was due to inadequate training and/or supervision.[12] A municipality may not be held liable for the tortious acts of its employees; rather, it can only be held liable for constitutional violations that occur as a result of its own actions or policies. <u>Monell</u>, 436 U.S. at 694-95.

In the instant case, the Medical Center is a political subdivision of the state, owned and operated by Jefferson Parish.

_____

[12] <u>See</u> <u>City of Canton, Ohio v. Harris</u>, 489 U.S. 378, 380 (1989) (holding that inadequate training or custom qualifies as an official policy or custom for the purposes of Section 1983 claims); <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 480-84 (1986) (nothing that decisions of municipal legislative bodies, officials with authority delegated to them by municipal legislative bodies, and individuals with final decisionmaking authority constitute official policy or custom).It should be noted that the above-referenced list is not exclusive, but merely illustrative of the type of actions that may fulfill the policy or custom element of a claim under 1983. The Supreme Court has stated that "it is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." <u>Pembaur</u>, 475 U.S. at 480.

See La. R.S. § 46:1072(2); *Bylaws* of Jefferson Parish Hospital District No.1 d/b/a West Jefferson Medical Center, W. Jefferson Med. Ctr.,1(Aug. 27, 2001), http://www.wjmc.org/docs/WJMCBylaws2001.pdf (explaining that the Board of Directors is under the general supervision of the parish city council). It is governed by its own Board of Directors ("the Board"), who are appointed by the Jefferson Parish City Council and Jefferson Parish President. *Bylaws* of Jefferson Parish Hospital District No.1 d/b/a West Jefferson Medical Center, W. Jefferson Med. Ctr., 1 (Aug. 27, 2001), http://www.wjmc.org/docs/WJMCBylaws2001.pdf. The Board is charged with setting policy for the Medical Center. Id. Consequently, the Medical Center  is best likened to a municipality and/or local body. Therefore, in order to state a Section 1983 claim against the Medical Center Plaintiff must allege that the constitutional violation occurred as a result of an official policy or custom. A plain reading of the complaint reveals that Plaintiff has failed to do so. At no point in the complaint does Plaintiff allege that the violation occurred pursuant to or in keeping with a policy of the Board, or that it was effected by an individual with final decisionmaking authority.[13] Furthermore, due to the nature of the

---

[13] Plaintiff notes in her complaint that she originally called the Medical Center to speak with Mr. Digerolamo's supervisor, Adonna Lowe, thereby, indicating that Mr. Digerolamo, a subordinate, could not have final decisionmaking authority. Compl., Rec. Doc. 1, p. 3, ¶ 13.

violation and conduct alleged, the defect can be cured by amendment. Accordingly, the Court finds that Plaintiff has failed to state a claim against West Jefferson Medical Center and that Plaintiff's Section 1983 claims against them must be dismissed.

### 2.    Mr. Digerolamo

The Medical Defendants assert that Mr. Digerolamo is entitled to qualified immunity from suit and, therefore, that the claims against him should be dismissed. Specifically, they argue that Mr. Digerolamo did not violate any known federal or state law because the law affords him a conditional privilege to call the police and report a public threat. As the Court has previously noted, a determination of whether a Defendant may be afforded qualified immunity is a two part test in which the court must determine (1) whether the plaintiff has alleged sufficient facts to demonstrate a violation of a constitutional right, and then (2) whether the constitutional right was clearly established at the time the alleged violation occurred. See discussion supra Part I.B.1.

In the instant case, Plaintiff has alleged that Mr. Digerolamo falsely accused her of threatening him to the police. Under Louisiana law, such allegations are best classified as a

claim for defamation.[14] In order for a defamation claim to be actionable under 42 U.S.C. § 1983, the defamatory statements must be accompanied by an infringement of some other interest. Paul v. Davis, 424 U.S. 693, 710-12 (1976). The accompanying infringement must be established by showing a significant loss of a constitutional right. San Jacinto Savings & Loan v. Kacal, 928 F.2d 697, 701-02 (5th Cir. 1991). In the instant case, Plaintiff has alleged that the accompanying infringement is her alleged false arrest. As has been noted, in order for an action for false arrest to lie, the arrest must have been affected without probable cause. See discussion supra Part I.B.1. Because this Court has already determined that probable cause existed for the Law Enforcement Defendants to arrest Plaintiff, the Court finds that Plaintiff has not alleged sufficient facts to demonstrate that a constitutional violation occurred. Likewise, to the extent that Plaintiff might argue that the accompanying constitutional

---

[14] Although Plaintiff has not specifically pleaded defamation, the elements of defamation are: "(1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury." Kennedy v. Sheriff of E. Baton Rouge, 2005-1418 (La. 7/10/06), 935 So. 2d 669, 674 (citing Costello v. Hardy, 03-1146 (La.1/21/04), 864 So.2d 129, 139). Likewise, under Louisiana law, "[w]ords which expressly or implicitly accuse another of criminal conduct" are defamatory per se. Kennedy, 935 So. 2d at 675. Accordingly, the Court finds that substantively, Plaintiff is alleging that Mr. Digerolamo defamed her.

violation is not false arrest, but rather, malicious prosecution, the Court notes that the Fifth Circuit has held that malicious prosecution is not a proper stand alone violation under the United States Constitution.[15] Thus, it does not provide the accompanying infringement necessary to bring a Section 1983 action for defamation. Accordingly, the Court finds that Plaintiff has failed to demonstrate that Mr. Digerolamo committed a constitutional violation and, therefore, that Plaintiff's 1983 claim against him must be dismissed.

### 3. Supplemental Jurisdiction and Plaintiff's State Law Claims

Having dismissed the only federal claim, Defendants urge the Court to exercise its discretion to dismiss the remaining state-law claims. A district court may decline to exercise supplemental jurisdiction where it has dismissed all other claims over which it had original jurisdiction. <u>Priester v. Lowndes Cnty.</u>, 354 F.3d

---

[15] Although Plaintiff's complaint does not use the term malicious prosecution, Plaintiff's allegations that Mr. Digerolamo caused criminal proceedings to be initiated against her despite her innocence, loosely fits the definition of malicious prosecution. <u>See</u> <u>Castellano v. Fragozo</u>, 352 F.3d 939, 945 (5th Cir. 2003) ("The tort malicious prosecution . . . occurs when one citizen initiates or procures the initiation of criminal proceedings against an innocent person, for an improper purpose and without probable cause therefor, if the proceedings terminate favorable for the person thus prosecuted." <u>Castellano v. Fragozo</u>, 352 F.3d 939, 945 (5th Cir. 2003).

414, 425 (5th Cir.2004) (citing 28 U.S.C. § 1367(c)(3)).[16] Under 28 U.S.C. § 1367(c)(3), a district court should consider the following factors in deciding whether to exercise supplemental jurisdiction over remaining state law claims: whether the claim raises a novel or complex issue of state law; whether the state law claims predominate; whether the district court has dismissed all of the claims over which it had original jurisdiction; and whether there are other compelling reasons for declining jurisdiction.

Here, the Court finds that the factors cited above militate in favor of declining to exercise supplemental jurisdiction over the remaining state-law claims. The Court has dismissed the Section 1983 claims, the only claims over which the Court had original jurisdiction. Furthermore, the fact that this case has not proceeded far beyond the motion-to-dismiss stage weighs in favor of the Court declining to exercise supplemental jurisdiction. See Harrison v. Jones, Walker, Waechter, Poitevent, Carrere & Denegre, L.L.P., 2005 WL 517342, at *6 (E.D. La. Feb. 24, 2005) (declining to exercise supplemental jurisdiction where court had not addressed the merits of plaintiffs' state law claims and any discovery that had been done could also be

---

[16] It appears clear that the only jurisdictional basis for the remaining claims is supplemental jurisdiction. The remaining claims arise under state law, and there is no diversity jurisdiction because Plaintiff and all of the Defendants are domiciled in Louisiana.

utilized in state court). Accordingly, all remaining state law claims will be dismissed without prejudice.

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendants' motions are **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff's claims against all Defendants under 42 U.S.C. § 1983, and Plaintiff's state claims for false arrest and false imprisonment are **DISMISSED with prejudice.**

**IT IS FURTHER ORDERED** that all of Plaintiff's remaining state law claims are **DISMISSED without prejudice.**

New Orleans, Louisiana this 21st day of February, 2013.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE